**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| ALAN KING, | § | |
| Plaintiff, | § | |
| V. | § | |
| | § | |
| JIM JARRETT, GREG PHILLIPS, TEXAS | § | A-15-CV-00491-LY-ML |
| GAS SERVICE/ONE GAS, INC., | § | |
| Defendants. | § | |

**REPORT AND RECOMMENDATION**

TO THE HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE

Before the Court are Plaintiff's Motion to Remand [Dkt. #10], which also contains Plaintiff's motion for leave to amend the complaint; Defendant Texas Gas Service/ONE Gas, Inc.'s Response to Plaintiff's Motion for Leave to Amend [Dkt. #11]; Defendant's Response to Plaintiff's Motion to Remand [Dkt. #12]; Plaintiff's Reply in Support of Motion to Remand [Dkt. #21]; Defendant's Opposed Motion to Strike Exhibits 2 and 3 to Plaintiff's Reply in Support of Motion to Remand [Dkt. #22]; and Plaintiff's Response to Defendant's Opposed Motion to Strike Exhibits 2 and 3 to Plaintiff's Reply in Support of Motion to Remand [Dkt. #24].

The Motions were referred by United States District Judge Lee Yeakel to the undersigned for a Report and Recommendation as to the merits pursuant to 28 U.S.C. § 636(b), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. After reviewing the pleadings, the relevant case law, as well as the entire case file, the undersigned issues the following Orders concerning the Motion to Strike [Dkt. #22] and the Motion for Leave to Amend (contained in

1

[Dkt. #10]) and makes the following Report and Recommendation to the District Court concerning the merits of Plaintiff's Motion to Remand [Dkt. #10].

## I.   BACKGROUND

Plaintiff, Alan King ("King") was employed by Texas Gas Service from approximately September 1, 2007 until approximately May 7, 2014.  Notice of Removal [Dkt. #1], Ex. 6, Orig. Pet. at 5, 8.  King's petition asserts Texas Gas Service ("TGS") is "aka ONEGAS, Inc., aka ONEOK, Inc., aka ONEOK Partnership."  *Id.* at 1.  In their Notice of Removal, Defendants have clarified that Texas Gas Service is an unincorporated division of the corporate entity ONE Gas, Inc.  Notice of Removal [Dkt. #1] at 2.

King alleges that individual Defendants, Greg Phillips and Jim Jarrett, engaged in a conspiracy to defame him and cause his constructive discharge from TGS in retaliation for King's involvement in a 2012-2013 in-house investigation into gas leaks in the TGS infrastructure in Austin, Texas. *Id.* at 4-28.  According to King, this investigation implicated Phillips in corporate mismanagement, caused the termination of some of Phillips' cronies, and left Phillips looking for revenge against those involved in discrediting him.  *Id.*

King does not attribute any of these motives to Jarrett.  Instead, King alleges Jarrett was at all times acting on Phillips' instructions, despite being "a seemingly decent person," because Phillips "significantly influences Jarrett's career, future, and financial security."  *Id.* at 20. Specifically, King alleges Jarrett was instructed by Phillips to give King a written disciplinary letter accusing him of colluding in discriminatory employment practices at the direction of a former supervisor.  *Id.* at 25**.**  King alleges that, contemporaneously with the disciplinary letter, Jarrett placed him on a 90-day probationary period (his second for similar, allegedly false, allegations of discrimination).  *Id.***.**  King further alleges Jarrett had some role in informing

"everyone" in the Austin offices of TGS that King had been disciplined for workplace discrimination, thus making it impossible for King to continue in a management role and ensuring King's constructive discharge.  *Id.* at 33; *see also* Reply at 7-8 and Ex. 2, Affidavit of Alan King.

King filed suit in Texas state court on October 20, 2014, asserting claims against Jarrett, Phillips, and TGS.  *See generally* Notice of Removal [Dkt. #1], Ex. 6, Orig. Pet.  King served TGS on May 7, 2014.  Though King apparently attempted to serve Jarrett and Phillips through TGS's attorney on the same date, there was no agreement in place regarding acceptance of service for those defendants, and the record reflects King has made no further attempt to serve them.  Reply [Dkt. #21], Ex. 4 (service returned unexecuted as to Jarrett and Phillips); Mot. Remand [Dkt. #10], Ex. 5 (written agreement by counsel for Texas Gas Service to accept service on TGS and its parent corporation, ONE Gas, Inc "in this matter only.").

Plaintiff's Original Petition alleges that both Plaintiff and Jarrett are citizens of Texas, and that Defendant TGS "is a limited partner of ONEOK, Limited Partnership . . .which is composed of individual partners who variously reside throughout Texas."  Notice of Removal [Dkt. #1], Ex. 6, Orig. Pet. at 1-2. Defendant TGS nevertheless removed the case to federal court on June 5, 2015, citing diversity of citizenship as the basis for federal subject matter jurisdiction.  *See generally* Notice of Removal [Dkt. #1].  According to TGS, it is "an unincorporated division of ONE Gas, Inc., an Oklahoma corporation," and thus has no common citizenship with Plaintiff, King or the Texas forum.  *Id.* at 2. Defendant further contends that Jarrett, the only other Texas defendant, is improperly joined and therefore should not be considered for purposes of examining federal subject matter jurisdiction.  *Id.*.

3

Plaintiff responds that he intended to state his claims against TGS as a component entity of ONEOK Partners, L.P., a limited partnership with various Texas members. Mot. Remand [Dkt.#10] at 2.  Plaintiff further asserts he has stated multiple claims for relief against Jarrett under Texas law.  *Id.* at 5-8.  In the alternative, Plaintiff asserts that any questions raised as to the validity of his claims against Jarrett apply with equal force to his claims against the non-diverse defendants, such that the District Court should remand the case under the "equally dispositive" doctrine.  *Id.* at 9-10.  Finally, Plaintiff seeks leave to amend the complaint to more clearly assert his claims against ONEOK Partners, L.P. if necessary.  *Id.* at 11 and Ex. 7, Proposed Amended Complaint.

In support of his contention that ONEOK Partners, L.P. should be a party defendant in this case, Plaintiff provides an affidavit stating he believed Jarrett and Phillips acted on behalf of ONEOK Partners, L.P. in disciplining him, and he provides copies of various letters, including a disciplinary letter from Phillips, written on "ONEOK" stationery.   Reply [Dkt. #21], Ex. 2. Defendant asserts this evidence is inadmissible and moves to strike Plaintiff's affidavit and the attached correspondence.  Opp. Mot. Strike [Dkt #22].  Defendant opposes Plaintiff's motion to amend the complaint to add ONEOK Partners, L.P., *see generally* Resp. Mot. Leave to File Am. Compl. [Dkt. #11], and asserts Plaintiff's existing claims against TGS are analytically distinct from his claims against Jarrett, such that the "equally dispositive" doctrine should not defeat federal subject matter jurisdiction over this case.  Resp. Mot. Remand [Dkt. #12] at 19.

## II.  STANDARD OF REVIEW

### A.    Federal Subject Matter Jurisdiction

In an action that has been removed to federal court, a district court is required to remand the case to state court if, at any time before final judgment, it determines that it lacks subject

matter jurisdiction. 28 U.S.C. § 1447(c); *see also Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 571 (2004); *In re 1994 Exxon Chem. Fire*, 558 F.3d 378, 392 (5th Cir. 2009).  When considering a motion to remand, "[t]he removing party bears the burden of showing that federal jurisdiction exists and that removal was proper." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002); *accord DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006).

Generally, a federal court has jurisdiction over a case in two circumstances.  The first, known as federal question jurisdiction, exists if a case "arises under the Constitution, treaties or laws of the United States."  28 U.S.C. § 1331.  Removal based on federal question jurisdiction is proper if the complaint establishes (1) federal law creates the cause of action, or (2) federal law is a necessary element of one of the well-pleaded claims.  *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808-09 (1988).  The Original Petition at issue in this case asserts only state law claims:  fraudulent inducement, tortious interference with contract or existing business relationship, intentional infliction of emotional distress, defamation, negligence, and violations of the Texas Labor Code, Chapter 21.  Notice of Removal [Dkt. #1], Ex. 6, Orig. Pet. at 28-36.  Therefore, federal question jurisdiction is not at issue here.  *Aaron v. Nat'l Union Fire Ins. Co.*, 876 F.2d 1157, 1160-61 (5th Cir. 1989).

The second circumstance in which a federal court has jurisdiction is frequently termed diversity jurisdiction.  *See generally* 28 U.S.C. § 1332 (setting out the elements required for jurisdiction based on "diversity of citizenship").  "Diversity jurisdiction under 28 U.S.C. § 1332 only exists where the parties are citizens of different states and the amount in controversy exceeds $ 75,000."  *White v. FCI USA, Inc.*, 319 F.3d 672, 674-675 (5th Cir. 2003).  The party seeking to invoke federal diversity jurisdiction bears the burden of establishing both that the

parties are diverse and that the amount in controversy exceeds $75,000.  *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998); *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995).  Furthermore, removal is appropriate "only if none of the parties properly joined and served as defendants is a citizen of the state in which the action was brought."  *Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 281 (5th Cir. 2007) (citing 28 U.S.C. § 1441(b)(2)). These necessary elements must exist "both at the time of filing in state court and at the time of removal to federal court."  *Coury v. Prot*, 85 F.3d 244, 249 (5th Cir. 1996)).  If diversity is established at the time of filing and the time of removal, "'it will not be destroyed by subsequent changes in the citizenship of the extant parties.'"  *Id.* (quoting *Smith v. Sperling*, 354 U.S. 91, 93 n. 1 (1957)).  If, however, there is an actual change in parties after removal—if, for example, a non-diverse new party is joined—diversity jurisdiction may be destroyed.  28 U.S.C. § 1447(e); *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir.1987).

**B.  Evidence Admissible to Support Allegations of Jurisdictional Facts**

"When challenged on allegations of jurisdictional facts, the parties must support their allegations by competent proof." *Hertz Corp. v. Friend*, 559 U.S. 77, 96-97 (2010).  "The court has wide, but not unfettered, discretion to determine what evidence to use in making its determination of jurisdiction." *Coury*, 85 F.3d at 249 (citing *Ray v. Bird & Son & Asset Realization Co.*, 519 F.2d 1081, 1082 (5th Cir. 1975)); *accord Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 804, 817 (5th Cir. 2007).  "'In making a jurisdictional assessment, a federal court is not limited to the pleadings; it may look to any record evidence, and may receive affidavits, deposition testimony or live testimony concerning the facts underlying the citizenship of the parties.'" *Deep Marine Tech., Inc. v. Conmaco/Rector, L.P.*, 515 F. Supp. 2d 760, 766 (S.D. Tex. 2007) (quoting *Coury*, 85 F.3d at 249).

The evidence reviewable by a court in the motion to remand context is characterized as "summary judgment-type evidence." *Campbell v. Stone Ins., Inc.*, 509 F.3d 665, 669 (5th Cir. 2007). "Typically, courts do not consider . . . unauthenticated statements when ruling on motions for summary judgment," and therefore such evidence should not be considered in the context of piercing the pleadings to determine improper joinder. *Williams v. Taylor*, No. 15-321015, Section "C," U.S. Dist. LEXIS 56904, *8 (E.D. La. Apr. 30, 2015) (citing U.S. v. Dotson, 821 F.2d 1034, 1035 (5th Cir. 1987)); *see also Cantor v. Wachovia Mortgage, FSB*, 641 F. Supp. 2d 602, 609 (N.D. Tex. 2009) (The removing defendant "cannot rely on incompetent evidence to meet its burden of proof.").

### C.      Standard for Leave to Amend After Removal

Under Rule 15(a), "leave to amend shall be freely given when justice so requires," and should be granted absent some justification for refusal. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Although Rule 15(a) ordinarily governs pretrial amendments to pleadings, the rule is limited by the removal statute, which states that "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e). "If the court grants the joinder, it must, under 1447(c) . . . [,] remand the case to state court. If it denies the joinder, it cannot remand." *Hensgens,* 833 F.2d. at 1182. Therefore, the court "must scrutinize an amendment [to a pleading] that would add a non-diverse party more closely than an ordinary amendment." *Priester v. JP Morgan Chase Bank, N.A.*, 708 F.3d 667, 679 (5th Cir. 2013). If, however, the amendment does not implicate joinder but simply properly names a pre-existing party to the lawsuit, diversity jurisdiction will not be affected by the change. *See Coury*,

85 F.3d at 249 (diversity jurisdiction will not be destroyed by post-removal "changes in the citizenship of the extant parties") (internal citations omitted).

## III.   ANALYSIS

For purposes of this analysis, the undersigned will start with the evidentiary question, to determine what is properly before the Magistrate Court for review and analysis.  The next step in the analysis is to determine which complaint is at issue—the original state court petition or the proposed amended complaint, which Plaintiff sought leave to file in conjunction with his motion to remand.  Once these basic foundations are laid, the Magistrate Court will analyze whether federal subject matter jurisdiction exists and whether removal is proper.

### A.      Evidentiary Considerations

Defendants contend Plaintiff's affidavit and the correspondence from Phillips, Jarrett, and TGS Gas Services appended to Plaintiff's affidavit, Exhibits 2 and 3 of Plaintiff's Reply in support of the Motion to Remand [Dkt. #21], do not constitute competent evidence.  *See generally* Mot. Strike [Dkt. #22].  Defendants contend the affidavit of King is not based on personal knowledge, and that the letters attached to the affidavit are unauthenticated hearsay.  *Id.* at 3-4.

The Magistrate Court finds King's affidavit, describing his personal experience of his disciplinary proceedings, sufficiently states the basis of his personal knowledge despite any technical deficiency in the jurat to that effect.  *See Lawson v. American Motorists Ins. Corp.*, 217 F.2d 724, 727 n.2 (5th Cir. 1954) (The requirement that an affidavit be based on personal knowledge is satisfied, even if the jurat fails to state the affiant's personal knowledge, if the "contents . . . show that the material parts of it were statements of personal knowledge or lack of

any knowledge."); *Int'l Real Estate Holding Co., LLC v. For 1013 Regents, LLC*, No. 3:11-cv-02317-M, 2013 U.S. Dist. LEXIS 36543, *18. n.3 (N.D. Tex. Mar. 13, 2013) (overruling lack-of-personal-knowledge objection to affidavit where affidavit stated affiant's "direct involvement," allowing the court to "conclude[] he has sufficient personal knowledge to testify as to the facts asserted.")

The Magistrate Court further finds the December 18, 2013 correspondence attached to King's affidavit, which is a letter addressed to King, is sufficiently authenticated by King's affidavit stating that he received the letter.  *See* Fed. R. Evid. 901(b)(1) (documents can be authenticated by the testimony of a witness with knowledge that "an item is what it is claimed to be.")  Moreover, the December 18, 2013 letter from Phillips (on ONEOK stationery) is a statement made by party opponents (Phillips and ONEOK, Inc.).  Federal Rule of Evidence 801 characterizes such statements as non-hearsay.  FED. R. EVID. 801(d)(2).  King makes no statements authenticating the other correspondence attached to his affidavit, and therefore this remaining correspondence is unauthenticated and not competent evidence.  *Cantor*, 641 F. Supp. 2d at 609.

Based on this analysis, the Magistrate Court RECOMMENDS the Motion to Strike [Dkt. #22] be GRANTED in PART and DENIED in PART.  The affidavit and the attached December 18, 2013 letter from Phillips to King need not be stricken, but the remaining correspondence is unauthenticated and should be stricken from the record.  The Motion to Remand (containing within it Plaintiff's motion for leave to amend) [Dkt. #10] and the responsive briefing will be considered with this evidentiary framework in mind.  As Plaintiff's remand motion and supporting briefing rely in large part on Plaintiff's contention that the complaint should be amended to direct several existing claims against an additional or substituted business entity,

ONEOK Partners, L.P., the Magistrate Court will first examine Plaintiff's motion for leave to amend the complaint to name this entity.

### B.       Motion for Leave to Amend

Plaintiff seeks leave to amend the complaint to substitute "the intended Defendant," ONEOK Partners, L.P., for "ONEOK Limited Partnership," the entity actually named in the Original Petition.   Mot. Remand [Dkt. #10] at 11-17.   He attaches a Proposed Amended Complaint as Exhibit 7 to his Motion to Remand.   *Id.*   Both the Original Petition and the Proposed Amended Complaint characterize the party defendant as "Texas Gas Services (TGS) Owned by ONEOK, Inc. (hereafter 'ONEOK'), also known as ONE GAS," and state that this Defendant (TGS owned by ONEOK, Inc.) "is a limited partner of ONEOK, Limited Partnership [or "ONEOK Partners, LP"], which is composed of individual parters who variously reside throughout Texas . . .."   Notice of Removal [Dkt. #1], Ex. 6, Orig. Pet. at 2; *see also* Mot. Remand. [Dkt. #10, Ex. 7, Proposed Amended Complaint at 2.   Neither version of the complaint asserts any claims for relief against the limited partnership entity; all  claims asserted against a corporate entity are asserted against Texas Gas Service (which, as clearly stated at page 2 of both versions of the complaint, is owned by ONEOK, Inc.).   *Compare* Orig. Pet. at 28-36 *with* Proposed Amended Complaint at 28-36 (stating claims for relief against TGS, not "the Partnership.")

"'The citizenship of one who has an interest in the lawsuit but who has not been made a party to the lawsuit . . . cannot be used . . . to defeat diversity jurisdiction.'"   *Corfield*, *v. Dallas Green Hills, LP*, 355 F.3d 853, 864 (5th Cir. 2003) (citing *Plains Growers, Inc. v. Ickes--Braun Glasshouses, Inc.*, 474 F.2d 250, 252 (5th Cir. 1973)).   Therefore, allowing Plaintiff to file the proposed Amended Complaint would not change the Court's analysis of diversity jurisdiction in

this case.   The fact that ONEOK, Inc. (through its unincorporated division, Texas Gas Service) is a party and is also a member of a limited partnership does not make the partnership a party to this suit (whether the partnership is called ONEOK Limited Partners or ONEOK Partners, L.P.). *Corfield*, 355 F.3d at 864-67.   This is true even if Plaintiff alleges the partnership has some pecuniary interest in the outcome of the lawsuit or will be bound by a judgment against ONEOK, Inc.: The fact that other entities are bound by a judgment against a party or may be forced to indemnify a party is insufficient to bring their citizenship into consideration when they are not direct parties to the suit. *Id.* at 864-65 (citing *Wheeler v. City of Denver*, 229 U.S. 342, 348, 350 (1913); *E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 936 (2d Cir. 1998)). "The 'citizens' upon whose diversity a plaintiff grounds jurisdiction must be real and substantial parties to the controversy."  *Corfield*, 355 F.3d at 867 (citing *Navarro Savings Assoc. v. Lee*, 446 U.S. 458, 460 (1980)).

Plaintiff's Reply Brief is the first document that actually alleges the Partnership has any direct party role in the lawsuit at all.   In the Reply Brief, Plaintiff asserts his Original Petition "clearly states" claims for negligence, fraudulent inducement, discrimination, and retaliation against "TGS (ONEOK Partners, LP)."   Reply [Dkt. #21] at 3.   In support of this contention, Plaintiff attaches his affidavit (discussed above), stating he believed ONEOK Partners, L.P. was the entity that was disciplining him via Phillips.  *Id.* at Ex. 2**.**  Plaintiff's Reply Brief further seeks leave to amend the complaint to assert "the ONEOK Code of Business Conduct and Ethics constituted a contract with employees such as King" in support of his contention that he is alleging fraudulent inducement against the corporate defendant and the corporate partnership. *Id.* at 6.

To the extent Plaintiff seeks to amend the complaint to substitute ONEOK Partners, L.P. for ONEOK, Inc., or to state claims against ONEOK Partners, L.P. as a joint defendant with ONEOK, Inc., the court must evaluate the request in light of the factors identified in *Hensgens,* 833 F.2d. at 1182.   To balance the valid, but competing interests of the parties implicated by a proposed post-removal joinder that would destroy diversity jurisdiction, the Fifth Circuit suggests consideration of: (1) the extent to which the purpose of the amendment is to defeat federal jurisdiction; (2) whether plaintiff has been dilatory in asking for an amendment; (3) whether plaintiff will be significantly injured if amendment is not allowed; and (4) any other factors bearing on the equities involved. *Id.*   As explained below, the balance of these factors weighs heavily against allowing any amendment to join or substitute ONEOK Partners, L.P. as a party defendant.

1.      *Purpose of the Amendment*

In this case, it is facially apparent that any attempt to join or substitute ONEOK Partners, L.P. as a party would be solely for the purposes of defeating diversity jurisdiction.   In analyzing this factor, it cannot be overlooked that in federal court, Plaintiff's motion for leave to amend the complaint is contained as an argument within his Motion to Remand [#10].   *Hensgens,* 833 F.2d at 1182.   Equally telling, Plaintiff has not made a single factual allegation, in his original petition, his proposed amended complaint, or his Reply brief and supporting exhibits, that supports his newfound belief that ONEOK Partnership, L.P. was the entity responsible for his employment, discipline, and alleged constructive termination. *See O'Connor v. Auto Ins. Co. of Hartford, Conn.*, 846 F.Supp. 39, 41 (E.D. Tex. 1994) (failure to plead viable claims against the non-diverse defendant weighs against allowing proposed amendment).

Even considering the "ONEOK stationery" at issue in Plaintiff's Reply briefing exhibits, the allegations in the pleadings (both the Original Petition and the Proposed Amended Complaint) are fairly read as allegations against ONEOK, Inc., as the parent of unincorporated division Texas Gas Service, and not as implicating any conduct of ONEOK Partners, L.P., a separate entity in which ONEOK, Inc. has a partnership interest. Notice of Removal [Dkt. #1], Ex. 6, Orig. Pet. at 2; *see also* Mot. Remand [Dkt. #10], Ex. 7, Proposed Amended Complaint at 2. For example, both pleadings state that Defendant Phillips "was meticulously charting his way to the top of the ***ONEOK, Inc.'s*** corporate ladder. Until he was promoted to President of Oklahoma Natural Gas in about mid-2011, Phillips had been a Vice President and then President of ***TGS***, officing in Austin, Texas." Orig. Pet. at 15, Proposed Am. Pet. at 15 (emphasis added). Nowhere in either version of the pleading does Plaintiff allege ONEOK Limited Partnership (or ONEOK Partnership) employed Phillips, Jarrett, or the Plaintiff himself. *See id.*

Even Plaintiff's supporting affidavit attached to the Reply brief, stating his subjective belief that the ONEOK stationery indicated Phillips was speaking for ONEOK Partners, L.P. (and not ONEOK, Inc.), is evidence only of that subjective belief. Reply [Dkt. #21], Ex. 2. In contrast, Defendants have provided their own sworn affidavit from ONEOK, Inc.'s HR Manager stating that King was employed by Texas Gas Service, a division of ONEOK Inc, at the time of the allegations underlying this suit, and he was not employed by ONEOK Partners, L.P. Affidavit of Robin Saenz [Dkt. #16]. Nothing in King's affidavit, stating only his own belief that ONEOK Partners, L.P. was disciplining him, undermines this evidence that ONEOK, Inc. was his actual employer at the time of the disciplinary action. *See id.*

Plaintiff's proposed First Amended Complaint, even when read in light of the additional allegations and requests for further amendment raised for the first time in his Reply and

supporting exhibits, contains only boilerplate legal conclusions that fail to establish any specific misconduct on the part of ONEOK Partners, L.P.   *O'Connor*, 846 F.Supp. at 41 (E.D. Tex. 1994).   This generic complaint, which Plaintiff now seeks leave to file in federal court in conjunction with a motion to remand, is specifically intended to defeat federal jurisdiction.   *Id.* The first *Hensgens* factor thus weighs in favor of denying the Motion for Leave to Amend. 833 F.2d at 1182.

### 2.   *Has Plaintiff Been Dilatory In Asking For an Amendment?*

"Where the plaintiff knew about the non-diverse party's activities at the time he filed suit but did not include that party as an original defendant, 'courts have viewed any later attempt to add the nondiverse party as a defendant as nothing more than an attempt to destroy diversity.'" *Wein v. Liberty Lloyds of Tex. Ins. Co.,* No. A-15-CA-19-SS, 2015 U.S. Dist. LEXIS 33895, *14 (W.D. Tex. Mar. 18, 2015) (quoting *In re Norplant Contraceptive Prods. Liab. Litig.*, 898 F. Supp. 433, 435 (E.D. Tex. 1995)).   Here, Plaintiff's affidavit, attached to his Reply brief, asserts he believed ONEOK Partnership, LP was disciplining him at the time he received Phillips' letter on ONEOK stationery in December of 2013.   Reply [Dkt. #21], Ex. 2**.**   This sworn statement, taken as true, establishes Plaintiff was aware of the parternship's alleged role in his complaint at the time he filed suit.   *See Wein*, 2015 U.S. Dist. LEXIS at *14.   Yet, at the time he filed suit and even at the time he sought to amend his complaint in federal court, the party he sued was ONEOK, Inc., and he has consistently alleged in both the original and proposed amended complaint that ONEOK Inc. was Phillips' employer at the time he disciplined King in December of 2013.   Even his Motion to Remand, filed July 6, 2015, characterizes the removing defendant as "Defendant Texas Gas Service/ONE Gas, Inc." *See generally* Mot. Remand [Dkt. #10]. Plaintiff's July 29, 2015 affidavit, made after Defendant responded to the Motion to Remand

alleging no claims had been stated against ONEOK Partnership, L.P., is the first time Plaintiff seeks to allege any conduct attributable to the partnership at all. This timeline, placing the first factual allegation against the partnership just over nine months after the complaint was filed, suggests Plaintiff has indeed been dilatory in asking for an amendment. *O'Connor*, 846 F.Supp. at 41 (finding plaintiff had not been diligent in seeking leave to amend when he "easily could have named [the non-diverse defendant] *ab initio*.")

3.    *Will Plaintiff Be Significantly Injured If the Amendment is Not Allowed?*

Plaintiff has not alleged any prejudice that would arise from the denial of his motion for leave to amend. Plaintiff has not asserted, for example, that the original named defendant, Texas Gas Service/ONEOK, Inc., would be unable to satisfy a judgment, *O'Connor*, 846 F. Supp. at 41, or that failure to allow the amendment would necessitate parallel proceedings in state court, *see Wein,* 2015 U.S. Dist. LEXIS at *17-18. The fact that a parallel state court action would "face[] legal obstacles to recovering against [ONEOK Partners, L.P.]," as described above, is an another important factor weighing against a finding of prejudice. *O'Connor*, 846 F. Supp. at 41.

4.    *Are There Any Other Factors Bearing on the Equities Involved?*

Plaintiff has not identified any equitable factors weighing in favor of allowing the amendment. *See id.* Under these circumstances, the *Hensgens* factors dictate that Plaintiff's motion to amend the complaint to add or substitute a non-diverse defendant should be denied. 833 F.2d at 1182.

Accordingly, the Magistrate Court RECOMMENDS that Plaintiff's motion to amend the complaint, contained in his Motion to Remand [Dkt. #10] be DENIED.

**C.    Diversity Jurisdiction Is Established**

Plaintiff contends that, even if his motion for leave to amend the complaint to add the limited partnership is denied, complete diversity is lacking in this case because individual defendant Jim Jarrett is a citizen of Texas, which was Plaintiff's home state at the time of filing, and which is the forum state for this suit.  28 U.S.C. § 1332(a); *id.* at § 1441(b)(2)).  In their Notice of Removal [Dkt. #1] and again in their Response to Plaintiff's Motion to Remand [Dkt. #12], Defendants contend Jarrett's citizenship should not be considered because he has been improperly joined in this matter.

### *1.  Improper Joinder*

Improper joinder "'can be established in two ways: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'"  *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 401 (5th Cir. 2013) (quoting *McKee v. Kansas City S. Ry. Co.*, 358 F.3d 329, 333 (5th Cir. 2004)).  Where, as here, there is no allegation of actual fraud in the pleadings, the test for improper joinder is "whether ***the defendant has demonstrated*** that there is no possibility of recovery by the plaintiff against an in-state defendant."  *Mumfrey*, 719 F.3d at 401 (quoting *In re 1994 Exxon Chem. Fire*, 558 F.3d 378, 385 (5th Cir. 2009)) (emphasis in *Mumfrey*).

The procedure for determining improper joiner under this standard was set out in *Smallwood v. Illinois Central Railroad Company*.  *Mumfrey*, 719 F.3d at 401 (citing *Smallwood*, 385 F.3d 569, 573 (5th Cir. 2004)).  "Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder."  *Smallwood*, 385 F.3d at 573. However, where there are "discrete facts" outside the pleadings "that would determine the propriety of joinder . . . the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry."  *Id.* (citing *Badon v. R J R Nabisco, Inc.*, 224 F.3d 382, 389 n.10 (5th Cir. 2000)).  The initial burden

is on the defendant to show the complaint fails to state a claim, and if the court elects to pierce the pleadings and conduct a summary inquiry, the burden remains with the defendant. *Mumfrey*, 719 F.3d at 401 (citing *Smallwood*, 385 F.3d at 573-75. Notably, although the *Smallwood* court referenced "a Rule 12(b)(6) challenge" as a guideline for determining improper joinder, the Fifth Circuit has issued two subsequent unpublished opinions holding that Texas' notice pleading standard—not the more particularized "plausible claim" standard articulated in cases analyzing Rule 12(b)(6)—is the appropriate standard of review for evaluating whether a plaintiff has fairly stated potentially viable claims against an in-state defendant. *Michels v. Safeco Ins. Co. of Ind.*, 544 F. App'x 535, 538 5th Cir. 2013); *Akerblom v. Ezra Holdings, Ltd.*, 509 F. App'x 340, 344, 346 (5th Cir. 2013).

Plaintiff has plead the following claims for relief against Jarrett:  defamation, fraudulent inducement, tortious interference with contract or business relationship, negligence, civil conspiracy, and intentional infliction of emotional distress. *See* Reply [Dkt. #21] at 3 (summarizing claims). Taking the facts alleged in the pleadings and the admissible evidence before the court as true, it is apparent that every one of these claims is invalid as a matter of Texas law. *Akerblom,* 509 F. App'x at 345.

   i.   Defamation Claim Against Jarrett is Time-Barred

Plaintiff's defamation claim against Jarrett is time-barred as a matter of law. *Ashley v. Hawkins,* 293 S.W.3d 175, 179 (Tex. 2008). The applicable limitations period for defamation claims is one year. Tex. Civ. Prac. & Rem. Code § 16.002(a). A cause of action for defamation accrues when the allegedly defamatory matter is published or circulated. *Newson v. Brod*, 89 S.W.3d 732, 736 (Tex. App.—Houston [1st Dist.] 2002, no pet.) Reading King's allegations and supporting affidavit liberally, it appears the subject of the alleged defamation in this case was

17

King's discipline for participation in allegedly discriminatory employment actions, and Jarrett and Phillips allegedly told King's subordinates in the Austin office that he had been disciplined for employment discrimation. Notice of Removal [Dkt. #1], Ex. 6, Orig. Pet. at 8.; *see also* Reply [Dkt. #21], Ex. 2.  It is not clear when these allegedly defamatory communications were made, but again, reading the complaint in the light most favorable to King, the latest possible date on which the alleged defamation could have occurred is the date of his alleged constructive discharge, May 7, 2014.  Notice of Removal [Dkt. #1], Ex. 6, Orig. Pet. at 8. Thus, King "was required to file suit ***and serve*** [Jarrett]" by May 7, 2015.  *Ashley*, 293 S.W.3d at 179.

King filed suit on October 20, 2014, but he has not served Jarrett with process as of the date of this Recommendation, almost a year later.  In arguing Jarrett is improperly joined, TGS contends King would be unable to recover on his defamation claim against Jarrett as a matter of law because he failed to serve Jarrett within the limitations period.  Resp. Mot. Remand [Dkt. #12] at 14-16.  Where, as here, "a defendant has affirmatively pleaded the defense of limitations, and shown that service was not timely, the burden shifts to the plaintiff to prove diligence." *Ashley*, 293 S.W.3d at 179.  A plaintiff's explanation may demonstrate a lack of diligence as a matter of law, "when one or more lapses between service efforts are unexplained or patently unreasonable." *Id.* (citing *Proulx v. Wells*, 235 S.W. 3d 213, 216 (Tex. 2007).

King asserts there was no unreasonable delay in service here, because he obtained a written agreement from counsel for ONE Gas, Inc./Texas Gas Service, dated November 11, 2014, to accept service of process "on behalf of ONE Gas, Inc./Texas Gas Service in this matter only." Mot. Remand [Dkt. #10], Ex. 5, and he sought to serve Jarrett by serving counsel for TGS on May 7, 2015, the last day of the limitations period.    Reply Br. [Dkt. #21], Ex. 4.  This service was not effective, and King's attempt to serve Jarrett through counsel for TGS was

"patently unreasonable," *Ashley*, 293 S.W.3d at 179, as the parties' written agreement covered only service on ONE Gas, Inc./TGS.  Mot. Remand [Dkt. #10], Ex. 5.  Moreover, even if King's attempt to serve Jarrett through the attorney for TGS could be deemed reasonable, King has not explained his continued failure to serve Jarrett as of the date of this Recommendation (September 28, 2015), eleven months after he first filed suit and over four months after the expiration of the limitations period on his defamation claims.  In determining whether a limitations period is tolled by a party's diligent efforts to effect service of process, the time elapsed is important but not determinative.  *Ashley*, 293 S.W.3d at 181.  "Rather, [the court] must consider the overall effort expended over the gap in service, and whether the search ceased to be reasonable, especially when other methods of service were available."  *Id.*   In this case, Plaintiff's Original Petition, filed October 20, 2015, lists Jarrett's Austin, Texas business address.  Plaintiff attempted to serve Jarrett only once, at an address associated only with counsel for TGS/ONE Gas, Inc.  Despite actual knowledge that this attempt at service was ineffective and actual knowledge of Jarrett's work address, Plaintiff made no further attempt to serve Jarrett with process.   In these circumstances, Plaintiff's effort to serve Jarrett outside the limitations period was not diligent as a matter of law, and Plaintiff's claims are time barred.  *Id.* at 182 ("A flurry of ineffective activity does not constitute due diligence if easily available and more effective remedies are ignored.")

ii.     Promises Regarding At-Will Employment Are By Definition Illusory

Similarly, with regard to Plaintiff's claims of fraudulent inducement, the lack of any binding agreement between King and Jarrett (or King and TGS as Jarrett's principal) is fatal as a matter of law. *Haase v. Glazner*, 62 S.W. 3d 795, 798 (Tex. 2001) ("[P]roof that a party relied to

its detriment on an alleged misrepresentation is an essential element of a fraud claim. Without a binding agreement, there is no detrimental reliance, and thus no fraudulent inducement claim.").

King's fraudulent inducement claim, read generously, states that he moved to Austin to take a promotion within TGS, and conducted a good faith investigation of gas leaks on behalf of TGS, in reliance on TGS and its agents' assurance that he would not be disciplined or lose his job in retaliation for this work.  The Texas Supreme Court, however, has consistently held there is no contractual relationship between an employer and an at-will employee. *Safeshred, Inc. v. Martinez*, 365 S.W.3d at 655, 659 (Tex. 2012) (collecting case).  A claim for fraudulent inducement "cannot be sustained when it is grounded on an unenforceable promise."  *Zorilla v. Aypco Constr. II, LLC,* 2015 Tex. LEXIS 555, *21 (Tex. 2015); *see also Sawyer v. E. I. du Pont de Nemours & Co.*, 430 S.W.3d 396, 401 (Tex. 2014) ("A representation dependent on continued at-will employment cannot be material because employment can terminate at any time.").

King's allegation that TGS represented his at will employment would continue without interference if he moved to Austin and conducted a search for gas leaks is not based on any enforceable employment agreement, and therefore King cannot establish the detrimental reliance element of his fraud claim.  *Id.*   Even if, as King claims, he was actually fired because of his truthful internal reporting, within TGS's corporate structure, of gas leaks in TGS's service areas, Texas law is clear that an employee can be fired for "a good reason, a bad reason, or no reason at all."  *Safeshred*, 365 S.W.3d at 660.[1]   King has not stated a claim for fraud or fraudulent inducement based on these factual allegations. *Sawyer*, 430 S.W.3d at 401.

---

[1] King does not allege, and his underlying factual allegations do not suggest, a claim that he was terminated for refusing to engage in criminal activity.  *See generally Sabine Pilot Service, Inc. v. Hauck*, 687 S.W.2d 733 (Tex. 1985).  There is no "whistleblower" cause of action against a private employer for retaliating against an at-will employee's complaints or reports of alleged improprieties in internal corporate affairs. *Laredo Med. Group Corp. v. Mireles*, 155 S.W.3d 417, 421-24 (Tex. App.—San Antonio 2004, pet. rev. denied) (citing *City of Midland v.*

iii.     King's Allegations Concern Jarrett's Actions as an Agent of TGS

King's tortious interference claim against Jarrett is undermined by the fact that his employment was at will, and not based on an enforceable contract, *see Wright v. Modern Group, Ltd.,* 2013 Tex. App. LEXIS 11187 (Tex. App. Corpus Christi Aug. 30, 2013).  Even assuming, however, that King's business relationship with TGS was entitled to protection from tortious interference by a third party, King has not alleged any facts suggesting that Jarrett was acting as a third party when he allegedly induced TGS to discipline and constructively discharge King.. *Mumfrey v. CVS Pharm., Inc.*, 719 F.3d 392, 402 (5th Cir. 2013).  Under Texas law, the parties to an ongoing business relationship cannot interfere with their own relationship. *Holloway v. Skinner*, 898 S.W.2d 793, 794-96 (Tex. 1995). Only a third party who is an outsider to the business relationship can be liable for tortious interference.. *Hood v. Edward D. Jones & Co., L.P.*, 277 S.W.3d 498, 502 (Tex. App.—El Paso 2009, pet. denied).  Because a corporation's agents, including its employees, share its legal identity, corporate employees generally cannot be held personally liable for tortious interference with their employers' business relations. *American Medical International, Inc. v. Giurintano*, 821 S.W.2d 331, 335 (Tex. App.—Houston [14th Dist.] 1991, no writ).  Therefore, "[f]or liability to attach, [Jarrett] must have acted outside the scope of his employment" in interfering with King's employment.  *Hood,* 277 S.W.3d at 502.

A similar analysis applies to King's conspiracy claims against Jarrett, as his alleged co-conspirators are TGS and Phillips, a fellow employee.  "Employees or agents of a principal acting within the course and scope of their employment or agency relationship cannot enter into a conspiracy with each other so long as they are not acting outside their capacity as an employee or agent or are not acting for a personal purpose of their own. . .."  *Crouch v. Trinque*, 262

_____

*O'Bryant*, 18 S.W.3d 209, 215-16 (Tex. 2000)); *see also Ed Rachal Found. v. D'Unger*, 207 S.W.3d 330, 333 (Tex. 2006) (per curiam).

S.W.3d 417, 427 (Tex. App.—Eastland 2008, no pet.) (collecting cases); *see also Leasehold Expense Recovery, Inc. v. Mothers Work, Inc*., 331 F.3d 452, 463 (5th Cir. 2003)("a corporation cannot conspire with itself, no matter how many of its agents participated in the wrongful action.")

To establish Jarrett was not acting as an agent of TGS with regard to the alleged interference or conspiracy to interfere King's employment, King must establish Jarrett "acted willfully and intentionally to serve the [his] personal interests at the corporation's expense." *Hood*, 277 S.W.3d at 502 (citing *Powell Indus. v. Allen,* 985 S.W.2d 455, 456 (Tex. 1998)). An employee can be held personally liable only if she acts wholly beyond her authority and purely to further personal objectives. *Giurintano*, 821 S.W.2d at 335-36. "A corporate officer's mixed motives—to benefit both himself and the corporation—are insufficient to establish liability." *Powell Indus*., 985 S.W.2d at 457. Instead, the corporate officer must be acting "on some personal purpose outside the scope of her duties" within the business entity. *Crouch*, 262 S.W.3d at 427 (citing *Fojtik v. First Nat'l Bank of Beeville*, 752 S.W.2d 669, 673 (Tex. App.—Corpus Christi 1988, writ denied).

King has certainly asserted Jarrett was acting in his own interests and not in the interest of TGS during the events underlying the complaint, but he has stated no factual allegations in support of this legal conclusion. While Texas notice pleading is less stringent that the federal pleading standard, "[t]he petition must at least provide sufficient factual information that the defendant is able to prepare a defense." *Griggs v. State Farm Lloyd's*, 181 F.3d 694, 699 (5th Cir. 1999). King's conclusory assertion that Jarrett acted in his own interests in causing King's constructive termination does not allege how Jarrett benefitted to TGS's detriment by causing King to resign, or even how Jarrett (as opposed to Phillips) purportedly caused King's

resignation.  Therefore, "[u]nder Texas law, there is no possibility that [King] can recover on his tortious interference claim against [Jarrett]."  *Crawford v. Charles Schwab & Co.*, No. 3:09-CV-0666-G, 2009 U.S. Dist. LEXIS 101598, *17 (N.D. Tex. Oct. 30, 2009) (analyzing fraudulent joinder allegations concerning a similar tortious interference claim) (citing *Hussong v. Schwan's Sales Enterprises, Inc.*, 896 S.W.2d 320, 326-27 (Tex. App.—Houston [1st Dist] 1995, no writ)). Similarly, there is no possibility that King's allegations would support a civil conspiracy claim under Texas law.  *Mastronardi v. Wells Fargo Bank, N.A.*, No. 4:15-CV-452-A, 2015 U.S. Dist. LEXIS 124142 (N.D. Tex. Sept. 17, 2015) (analyzing fraudulent joinder allegations concerning similar intra-corporate conspiracy claim).

In much the same vein, King's negligence claim against Jarrett is fundamentally flawed because King fails to articulate any duty owed him by Jarrett, independent of the duties running between King and TGS.  *Chon Tri v. J.T.T.*, 162 S.W.3d 552, 562-63 (Tex. 2005) (citing *Leitch v. Hornsby*, 935 S.W. 2d 114, 117 (Tex. 1996)).  "In Texas, individual liability for corporate negligence 'arises only when [an] officer or agent owes an independent duty of reasonable care to the injured party apart from the employer's duty.'"  *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 315 (5th Cir. Tex. 2002) (quoting *Leitch*, 935 S.W. 2d at 117). Because King has not identified any duty owed to him by Jarrett that is not part and parcel of the employment relationship, he has failed to state a claim for negligence against Jarrett.  *Great Plains*, 313 F.3d at 315 (analyzing fraudulent joinder allegations concerning individual corporate officer's alleged negligence).

iv.   Intentional Infliction of Emotional Distress Is Not An Available Claim

King's final claim against Jarrett, intentional infliction of emotional distress ("IIED"), is a "gap filler" tort, meaning it is not available where "the gravamen of a plaintiff's complaint is

another tort." *Akerblom,* 509 F. App'x at 345 ("[T]he gravamen of [Plaintiff's] claims sound in contract and fraud; accordingly, he cannot state an emotional-distress claim.")(citing *Draker v. Schreiber,* 271 S.W. 3d 318, 323 (Tex. App.—San Antonio 2008, no pet.); *see also Byrd v. Vick,* 409 S.W.3d 772, 782 (Tex. App.—Fort Worth 2013, overruled on other grounds by *Cartney, Hanger, LLP v. Byrd,* No. 13-0861, 2015 Tex. LEXIS 619 (Tex. 2015)) (holding IIED claim is unavailable where the complaint alleges the same underlying conduct supports a claim for defamation). IIED is unavailable "regardless of whether the plaintiff succeeds on, or even makes the alternate claim." *Draker,* 271 S.W. 3d at 322. Because the gravamen of King's claim for relief is that Jarrett allegedly defamed him and/or defrauded him, the "gap-filler" tort of intentional infliction of emotional distress provides no basis for recovery as a matter of law. *Akerblom,* 509 F. App'x at 345.

### 2. The "Equally Dispositive" Doctrine Does Not Apply

In "that limited range of cases where the allegation of improper joinder rests only on a showing that . . . is equally dispositive of all defendants," a federal court must remand the matter to state court on the basis that "there is no improper joinder[,] . . . only a lawsuit lacking in merit. *Smallwood,* 385 F.3d. at 574-75. Plaintiff contends that, if there are questions regarding the viability of its claims, those questions apply with equal force to all defendants and therefore remand is warranted. *See id.*

As Defendants correctly point out, however, the "equally dispositive" doctrine applies only where the failings in Plaintiff's claims against the non-diverse defendant "is equally dispositive of all defendants rather than . . . the in-state defendants alone." *Gasch v. Hartford Accident & Indem. Co.,* 491 F.3d 278, 283 (5th Cir. 2007) (citing *Smallwood,* 385 F.3d at 574). In contrast, where "at least some of [the] claims against the non-resident defendants are

analytically distinct from and in addition to . . . the wrongs allegedly committed by the resident defendants," the concerns addressed by the "equally dispositive" doctrine are not implicated. *Boone v. Citigroup, Inc.*, 416 F.3d 381, 392 (5th Cir. 2005).

In this case, Plaintiff has asserted violations of Chapter 21 of the Texas Labor Code solely against corporate defendant, TGS.  Orig. Pet. at 36.  This claim is not asserted against Jarrett, nor is it derivative of any claim asserted against Jarrett.  The disposition of Plaintiff's claims against Jarrett for defamation, fraudulent inducement, tortious interference, negligence, civil conspiracy, and intentional infliction of emotional distress can have no bearing on the disposition of Plaintiff's claim against TGS for violations of the Texas Labor Code. Because the analysis of this claim is distinct from the analysis of the claims against Jarrett, the "equally dispositive" doctrine does not apply.  *Boone*, 4165 F.3d at 392.  Defendants have met their burden to establish Plaintiff cannot state a viable claim for relief against Jarrett as a matter of law, and therefore his joinder in this matter is improper. *Id.*

## IV.   RECOMMENDATIONS

For the reasons articulated above,

IT IS ORDERED that Defendants' Motion to Strike Evidence [Dkt. #22] is GRANTED IN PART and DENIED IN PART.  In making a recommendation on the merits of Plaintiff's Motion to Remand [Dkt. #10], the Magistrate Court will consider the affidavit of the Plaintiff and the December 18, 2013 letter appended thereto, but will exclude the additional attached documents not identified in Plaintiff's affidavit or otherwise authenticated in the record.

IT IS FURTHER ORDERED that Plaintiff's Motion to Amend the Complaint, contained within Plaintiff's Motion to Remand [Dkt. #10] is DENIED.

Finally, the Magistrate Court RECOMMENDS the District Court DENY Plaintiff's Motion to Remand [Dkt. #10], as complete diversity exists in this matter and the District Court has federal subject matter jurisdiction pursuant to 28 U.S.C. §1332.

## V.   OBJECTIONS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections. *See Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See* 28 U.S.C. § 636(b)(1)(C);  *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED October 1, 2015

_____
MARK LANE
UNITED STATES MAGISTRATE JUDGE

26